**In the Interest of M.W., A Child.**

**No. 12–96–00296–CV.**

Court of Appeals of Texas,
Tyler.

May 30, 1997.

Rehearing Overruled June 30, 1997.

Eric Lee Mc Donald, Dallas, James B. Johnston, Tyler, for appellant.

Thomas A. Dunn, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

This is an appeal of a judgment rendered in a suit affecting a parent/child relationship

in which custody of a minor child, M.W. ("the child"), was awarded to her paternal grandmother, Linda Warren ("Grandmother"), over the objection of Appellant Diana Bryant ("Mother"), her natural mother. From the trial court's order awarding managing conservatorship to Grandmother, Mother brings three points of error. We reverse and render as to Grandmother's appointment as managing conservator, and remand Father's Motion to Modify for further trial court proceedings.

The record shows that Mother gave birth to the child on December 15, 1991. Shortly thereafter, Mother filed a paternity action against Tony Warren ("Father"), a man to whom she had never been married.[1] He contested his paternity. In October of 1992, the court rendered judgment establishing Father's paternity of the child, and required him to pay child support. Mother was named the sole managing conservator. In May of 1993, Father and Mother entered into a written agreement which was signed by both parties and notarized before a notary public. The substance of the agreement was that Father would have temporary custody of the child from May of 1993 until May of 1995, and that Father's custody would not be construed as abandonment by Mother. After entering into the agreement, Mother moved to Kerens, Texas, where she lived with her family, attended Navarro Junior College, and worked full time at the Kmart Distribution Center. In May of 1995, Mother completed her degree. In July of 1995, Father filed a Motion to Modify, seeking to be named managing conservator. The court granted his request for a temporary restraining order, preventing Mother from seeing the child. On August 18, 1995, the trial court entered temporary orders and named Father as managing conservator of the child. After a negative report from the court-appointed psychologist concerning Father, Grandmother filed a Petition in Intervention on December 7, 1995, requesting that the court appoint her as the child' sole managing conservator. On or about January 31, 1996, in a non-jury

trial, the trial court granted Grandmother's petition. Father and Mother were appointed possessory conservators.

In her first point of error, Mother maintains that the trial court erred in failing to file findings of fact and conclusions of law. Pursuant to Tex.R.App.P. 81(a), we ordered this appeal be abated and remanded to the trial court for entry of findings of fact and conclusions of law as requested by Appellant. The trial court complied with this court's order, thereby correcting the error. Mother's first point of error is overruled.

In Mother's second point of error, she alleges that the trial judge erred in taking judicial notice of evidence from the temporary hearing, since he did not remember the case. At the final hearing the following exchange occurred:

The Court: Okay. You are right. This is not the lady from Dallas; is it?

Mr. Norwood: No. she presently resides in Kerens, Your Honor.

The Court: Okay. Good. I was confusing this with that Dallas case. Just a second.

Mr. Norwood: We don't want you to take judicial knowledge of the wrong case.

Mr. Dunn: Would you like us to hit with you some of the brief facts?

The Court: I do too many of these at the same time. Okay. Yeah, I've got—that's why I'm doing it this way, to make sure I've got it in my mind. Because before I do something that is bound to upset somebody, I want to make sure I'm doing it for the right reasons, and have the right case, and have the right history. The lady is in Kerens. Okay.

Mr. Norwood: The child I believe was born in December of 1991. So she would be a little over four years old.

The Court: Okay. I remember it then.

Mr. Norwood: So based upon that, we have stipulated that the Court can take

---

1. Father was 16 years old when he and Mother began their sexual relationship, 17 years old when the child was conceived, and 18 years of age when the child was born. He lived at home

with Grandmother until he was 21 years old. Mother is approximately 6 years older than Father.

judicial knowledge of the previous testimony on the temporary hearings.

The Court: How could I not any way? Specifically, that's one of the reasons that I went ahead to make sure that I remember the right case.

Mr. Norwood: There were a number of exhibits introduced. We would ask that the Court take judicial knowledge of those exhibits.

The Court: I will. I will do that.

■■■ Pursuant to TEX.R.CIV.EVID. 201, a trial judge may take judicial notice of a fact if it is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Besing v. Smith,* 843 S.W.2d 20, 21 (Tex.1992). Facts that are notorious and indisputable,[2] or well known and easily ascertainable,[3] may be judicially noticed. Mother cites *May v. May* for the proposition that a trial judge cannot, however, take judicial notice of evidence formerly admitted at a hearing on temporary conservatorship when making a final determination as to conservatorship at a later time. *May v. May,* 829 S.W.2d 373, 376 (Tex.App.—Corpus Christi 1992, writ denied). Although we agree that the trial court improperly took judicial notice of prior proceedings, Norwood, Mother's attorney, was the party who requested the court to do so. If he had any misgivings about the court's ability to remember the details of the previous hearings, he failed to voice them. A timely and proper objection is necessary to preserve error in the improper admission of evidence. *Abeyta v. Travelers Insurance Co.,* 566 S.W.2d 708, 710 (Tex.Civ.App.—Amarillo 1978, writ dismissed w.o.j.); TEX.R.CIV.EVID. 103(a)(1). By failing to object at trial, Mother cannot now complain on appeal that the court erred in

taking judicial notice of the testimony and other evidence elicited at the hearings on temporary orders. We overrule point of error number two.

■■■ In her third point of error, Mother avers that the trial court erred in granting Grandmother's Petition in Intervention and in appointing her managing conservator of the child because there is no evidence or, in the alternative, insufficient evidence, to support the court's ruling. While findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions,[4] the trial judge's findings of fact are not conclusive when a complete statement of facts appears in the record.[5] The judge's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ). In an appeal from a nonjury trial, an attack on the sufficiency of the evidence must be directed at specific findings of fact, rather than at the judgment as a whole. *Carter v. Carter,* 736 S.W.2d 775, 777 (Tex.App.—Houston [14th Dist.] 1987, no writ). Generally, a finding of fact not challenged in a point of error on appeal is binding on the appellate court. *Wade v. Anderson,* 602 S.W.2d 347, 349 (Tex.Civ.App.—Beaumont 1980, writ ref n.r.e.).

In the instant case, Mother complains of the following specific findings of fact: 1) Mother did not provide any support for the subject child for an extended period of time; 2) the history of violence between Mother and Father, and the prospects of violence between them in the future, present a dangerous circumstance for the child; and 3) Mother relinquished the child to Grandmother.

---

2. *Harper v. Killion,* 162 Tex. 481, 483, 348 S.W.2d 521, 522 (1961).

3. *Barber v. Intercoast Jobbers & Brokers,* 417 S.W.2d 154, 158 (Tex.1967).

4. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ refused).

5. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam,* 699 S.W.2d 199 (Tex. 1985).

In reviewing an attack on the legal sufficiency of the evidence, or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the trial court's findings, and disregard all evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990 .). If there is more than a scintilla of evidence to support the finding, the court of appeals may not overturn the finding on a no evidence point of error. *Responsive Terminal Systems, Inc. v. Boy Scouts of America*, 774 S.W.2d 666, 668 (Tex. 1989). When reviewing a judgment to determine factual insufficiency of the evidence, this court must consider and weigh all of the evidence, and should set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

This suit turns on the trial court's decision to appoint a non-parent managing conservator of a child. This is an extremely important issue because the right of a parent to raise his or her child is an "essential right" and a "basic civil right of man" and woman. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Prokopuk v. Offenhauser*, 801 S.W.2d 538, 539 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Because of this fundamental right, the Texas Family Code gives parents a legal preference in being appointed sole or joint managing conservators, as follows: "A parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child ..." TEX.FAM.CODE ANN. § 14 .01(b), (Vernon Supp.1991). In addition, there is a strong presumption under Texas law that the best interest of a child is best served if a natural parent is awarded custody. *Brook v. Brook*, 881 S.W.2d 297, 298 (Tex.1994); *Mumma v. Aguirre*, 364 S.W.2d 220, 221 (Tex.1963). Consequently, this parental presumption imposes a heavy burden on a non-parent who is seeking conservatorship. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex.1990).

The parental presumption, however, may be rebutted by a non-parent when:

(1) the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; or

(2) a person who is not a parent seeks appointment as managing conservator of the child by intervening in or commencing a suit affecting the parent-child relationship ... and the court finds that:

(A) the child's parent, if the child has only one parent, or parents have voluntarily relinquished possession and control of the child to the person or agency for a period of one year or more a portion of which was within 90 days preceding the date of intervention or commencement of the suit or proceeding; and

(B) the appointment of the person as managing conservator of the child is in best interest of the child.

TEX.FAM.CODE ANN. § 14.01(b)(1), (b)(2) (Vernon Supp.1991).[6]

The first scenario in which the court may appoint a non-parent conservator arises when the parent's conservatorship would significantly impair the child's health or emotional development. TEX.FAM.CODE ANN. § 14.01(b)(1). In this situation, the non-parent must prove by a preponderance of credible evidence that awarding custody to the parent would result in serious physical or emotional harm to the child. *Lewelling*, 796 S.W.2d at 167; *Brook*, 881 S.W.2d at 298. Evidence must support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm. *May*, 829 S.W.2d at 377. This link between the parent's conduct and harm to the child, moreover, may not be based on evidence which raises mere surmise or speculation of possible harm. *Id.* When a non-

6. Because Father filed his motion to modify before September 1, 1995, the pre–1995 Family Code provisions apply.

parent and a parent are both seeking managing conservatorship, "close calls" go to the parent in evidentiary review. *Ray v. Burns*, 832 S.W.2d 431, 434 (Tex.App.—Waco 1992, no writ).

Examples of acts or omissions which would show significant impairment of the child are physical abuse, severe neglect, abandonment, drug or alcohol abuse or very immoral behavior on the part of the parent. *Thomas v. Thomas*, 852 S.W.2d 31, 35–36 (Tex.App.—Waco 1993, no writ). When determining fitness of a parent, the material time to consider is the present. *May*, 829 S.W.2d at 377. This concept is abrogated, however, by the fact that an adult person's future conduct may be somewhat determined by recent past conduct. *Id.* Nonetheless, evidence of past misconduct may not by itself be sufficient to show present unfitness. *Id.* It is wholly inadequate to simply present evidence that a non-parent, such as a grandparent, would be a better choice as custodian of the child. *Lewelling*, 796 S.W.2d at 167.

In *Lewelling*, the Texas Supreme Court held that there was no evidence to show that granting custody to the mother of the subject child would significantly impair the child's physical health or emotional development. *Id.* The Court concluded that the following amounted to no evidence which would support awarding custody to the child's grandparents: 1) physical abuse between the spouses, including when the mother was pregnant; 2) recommendation by a social worker that the child be placed with the grandparents; 3) the child had resided most of his life with the grandparents; 4) the mother did not see the child for nearly a two month period while the child was living with the grandparents; 5) the mother was unemployed and did not have much money; 6) the mother had twice been a patient at Terrell State Hospital; and 7) the mother lived in crowded conditions. *Id.* at 165–67.

Similarly, in *Brigham*, the court held that there was no evidence to support granting the maternal grandmother sole managing conservatorship over the mother. *Brigham v. Brigham*, 863 S.W.2d 761, 764 (Tex.App.—Dallas 1993, writ denied). The court held that the following amounted to no evidence which would support awarding custody to the maternal grandparent: 1) a history of marital problems between the parents of the child; 2) during the marriage, the children spent a great deal of time in their grandmother's home and she had a close and nurturing relationship with them; 3) the mother committed adultery; and 4) the mother left town without telling anyone of her whereabouts. *Id.* at 763–64.

The court in *In re W.G.W., a Child* held that there was enough evidence to overrule a no evidence point; but there was insufficient evidence to support the jury's finding of significant impairment. *In re W.G.W., a Child*, 812 S.W.2d 409, 414–15 (Tex.App.—Houston [1st Dist.] 1991, no writ). The court held the following was insufficient evidence to support awarding custody to a non-parent: 1) the mother and non-parent seeking custody had an unsuccessful marriage; 2) the child lived with the non-parent for a period of time; 3) the mother and non-parent seeking custody abused one another while the child was in the home, including the mother brandishing a fire poker in front of the children, as well as trying to stab the non-parent with a knife in front of the children; and 4) the mother was constantly moving around, including changing residences twenty-one times within a period of five years. *Id.* at 414, 418–20.

Conversely, the court in *May* found sufficient evidence to support granting custody of the children to their material grandfather. *May*, 829 S.W.2d at 373. The court found that the following acts were sufficient to prove significant impairment: 1) the father was convicted of possessing marijuana within the two years preceding the custody battle; 2) the father and mother were selling drugs out of their house with the children present; 3) the father had used illegal drugs; 4) the father failed to pay court ordered child support; and the father failed to exercise any visitation periods. *Id.* at 375.

The second fact situation which supports a rebuttal of the parental presumption is voluntary relinquishment of the child to the non-parent for a period of one year or more, a portion of which was within 90 days of the non-parent filing an intervention. Tex.Fam. Code Ann. § 14.01(b)(2).

■ Because the trial court took judicial notice of the temporary hearing, we will consider that evidence, as well as the testimony and evidence of the final hearing in determining the sufficiency points. Mother admitted shooting Father in the leg when she was pregnant with the child in order to stop him from beating her. The child lived with Mother from the date she was born until either June of 1992 or May of 1993.[7] Mother then asked Father if the child could live with him and Grandmother for two years so she could work and attend school on a full-time basis, with the intention of improving her career potential for her child's sake. In May of 1993, Father and Mother entered into a written agreement which stipulated that Father would have temporary custody of the child from May of 1993 to May of 1995. The agreement stated that Father's possession of the child was not to be construed as abandonment by Mother. Father first testified that he never signed an agreement. When confronted with the document, he then testified that he signed the agreement because Mother threatened to take the child away from him if he did not. After entering into the agreement, Mother moved to Kerens to attend college. Mother testified that she intended for both Father and Grandmother to take care of the child for this two year period. She realized that Grandmother would probably be the primary caregiver. From May of 1993 until May of 1995, Mother regularly visited the child and spoke with her on the telephone. She picked her daughter up during holidays and weekends, and there were no apparent problems with the arrangement. During this time, Mother maintained insurance for the child. Grandmother, however, testified that on at least two occasions, Mother failed to take the child to the doctor when she was ill. Father married in May of 1995, and moved out of Grandmother's house. Neither Father nor Grandmother told Mother that Father was no longer living with Grandmother, or that the child was not living with Grandmother on a full-time basis. Mother graduated from college with a medical technology degree in May of 1995. Soon thereafter, she notified Grandmother that

she would be taking permanent possession of the child at the end of August, since her vacation was scheduled for that time period. Father then filed his Motion to Modify to be named managing conservator.

Although there was testimony of previous violence between Mother and Father, Father stated that it had been a while since he and Mother had even argued. They had no problems during the period of temporary visitation ordered by the trial court before the final hearing. Neither Mother nor Father ever hurt the child, nor made any comments to anyone about hurting or harming the child. The court-appointed psychologist, who recommended that the court appoint Grandmother managing conservator, testified that there was a "potential" of future harm to the child. She based her opinion of a potential threat on acts which took place five years before, prior to the birth of the child. The psychologist stated that she believed Grandmother would be a better choice, and that the parents of the child were too immature, defensive and angry at one another to be good parents.

In view of the undisputed evidence that the child had never been harmed by Mother or Father, and that any violence between Mother and Father occurred remote in time, and never in front of the child, there is no evidence that supports a logical inference that some specific, identifiable behavior or conduct of either parent will probably cause impairment. Grandmother failed to show a link between Mother's and Father's conduct and harm to the child which raised more than speculation of possible harm. We, therefore, conclude that the instances cited and the evidence presented were so weak as to do no more than create a mere surmise or suspicion that Mother's or Father's appointment as managing conservator would significantly impair the child, either physically or emotionally.

■ On the issue of voluntary relinquishment, Mother admitted that she left her child with Grandmother for two years while she attended school and received her degree.

---

7. The date was hotly contested. It is interesting to note that in 1992, when Father testified he had possession of the child, he was contesting the paternity suit.

But the Family Code requires that the non-parent file the intervention within ninety days of the cessation of the voluntary relinquishment. In the instant case, Mother's voluntary relinquishment ended either when the temporary restraining order was put into place in July of 1995, or when Mother notified Grandmother that she was going to take the child back at the end of August, 1995. From one of these two dates, Mother was no longer voluntarily relinquishing her child, as required by Tex.Fam.Code Ann. § 14.01(B)(2). Grandmother did not file her Petition in Intervention until December 7, 1995, more than ninety days later. We conclude that there was no evidence that Mother relinquished the child to Grandmother within ninety days of the filing of the Intervention, or that Father ever relinquished the child at all.

We reverse and render the trial court's order as to Grandmother's appointment as managing conservator, and remand to the trial court for determination of Father's original Motion to Modify. The trial court shall determine whether, pursuant to the dictates of Tex.Fam .Code Ann. § 14.08, Mother shall continue as managing conservator, or whether the court shall appoint Father managing conservator.