Opinion
filed October 18, 2012

 

                                                                       In The

                                                                              

  Eleventh Court of
Appeals

                                                                   __________

 

                                                         No. 11-12-00002-CV

                                                    __________

 

                           
IN THE INTEREST OF A.D.A., A CHILD



 

                                   On Appeal from
the 318th District Court

 

                                                          Midland
County, Texas

 

                                                  Trial
Court Cause No. FM51,404

 



 

                                            M
E M O R A N D U M   O P I N I O N

This is a custody case
that arose after the death of A.D.A.’s mother.  The trial court appointed the
maternal aunt, Angelina Winslett, and the father, Murry Addison, as joint
managing conservators and granted Winslett the exclusive right to determine A.D.A.’s
primary residence.  The trial court concluded that the parental presumption had
been rebutted because it found both that Addison voluntarily relinquished
custody to a nonparent for a year and that appointing Addison would
significantly impair A.D.A.  We reverse and remand.

            Addison alleges that there
is no evidence or, alternatively, insufficient evidence that appointing him as
the sole managing conservator would significantly impair the child’s physical
or emotional development.  Addison also contends that the trial court abused
its discretion when it appointed a nonparent as joint managing conservator with
the right to designate the child’s residency.  Each of Addison’s eight issues
on appeal attack the grounds relied upon by the trial court to rebut the
parental presumption.      

            We review a determination of
conservatorship for abuse of discretion.  Gillespie v. Gillespie, 644
S.W.2d 449, 451 (Tex. 1982).  Under this standard, legal and factual
sufficiency challenges are not independent grounds of error but factors used to
determine whether the trial court abused its discretion.  Gardner v. Gardner,
229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.); London v. London,
192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  It is a
two-step analysis.  First, we determine whether the trial court had sufficient
information upon which to exercise its discretion, and second, we determine
whether the trial court erred in its application of discretion.  Gardner,
229 S.W.3d at 751.

            “Where findings of fact and
conclusions of law are not properly requested and none are filed, the judgment
of the trial court must be affirmed if it can be upheld on any legal theory
that finds support in the evidence.”  In re W.E.R., 669 S.W.2d 716, 717
(Tex. 1984).  But we will sustain a legal sufficiency challenge if the evidence
of a vital fact is absent, does not rise above a mere scintilla, or establishes
the opposite of that vital fact. Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998).  We consider the evidence favorable to the
finding if a reasonable factfinder could and disregard contrary evidence unless
a reasonable factfinder could not.  Cent. Ready Mix Concrete Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d 802,
807 (Tex. 2005).

The best interest of
the child is always the primary consideration of the court in determining
managing conservatorship.  Tex. Fam.
Code Ann. § 153.131 (West 2008).  “While trial courts should
be afforded broad discretion in deciding family law questions, the Legislature
has explicitly limited the exercise of that discretion when a nonparent seeks
appointment as managing conservator.”  Lewelling v. Lewelling,
796 S.W.2d 164, 168 (Tex. 1990).  

When a court determines
conservatorship between a parent and a nonparent, there is a presumption that
appointing the parent as the sole managing conservator is in the child’s best
interest, and this presumption is deeply embedded in Texas law.  Section 153.131(a);
Lewelling, 796 S.W.2d at 166 (citing Mumma v. Aguirre, 364 S.W.2d
220, 221 (Tex. 1963)).  “It is no longer adequate to offer evidence that the
nonparent would be a better custodian of the child,” and close calls should be
decided in favor of the parent.  Lewelling, 796 S.W.2d at 167 (citing Mumma,
364 S.W.2d at 221).  Thus, a nonparent seeking conservatorship has a heavy
burden.  To rebut the parental presumption, a court must find that (1) the
appointment would significantly impair the child’s physical health or emotional
development; (2) the parent voluntarily relinquished care, control, and
possession of the child to a nonparent for a year or more; or (3) the
parent has exhibited a history of family violence.  Tex. Fam. Code Ann. §§ 153.131, .373, .004 (West 2008). 
The evidence that rebuts the parental presumption focuses on the parent’s
conduct.

The trial court found
both that Addison voluntarily relinquished care, custody, and control of the child
and that appointing Addison as sole managing conservator would significantly
impair the child’s physical health or emotional development.   The trial court also
found that it was in the best interest of the child to appoint both parties as
joint managing conservators and to grant Winslett the right to determine
residency.  There were no findings of fact filed in this appeal, so we will
address both grounds relied upon by the trial court to determine whether the
evidence supports either theory and permits us to uphold the trial court’s
order.  

Voluntary
Relinquishment

            Winslett’s contention at
trial and again on appeal was that Addison’s sparse contact with A.D.A. for the
first ten years of his life proved that he voluntarily relinquished custody.  We
disagree. 

To rebut the parental presumption,
the court must find both that the parent voluntarily relinquished actual care,
custody, and control of the child to a nonparent for a period of one year or
more and that appointment of a nonparent is in the child’s best interest.  Section 153.373. 
Voluntary relinquishment may be shown by evidence of intent to surrender
custody and care.  See Critz v. Critz, 297 S.W.3d 464, 473 (Tex.
App.—Fort Worth 2009, no pet.).  But relinquishment may be negated by evidence
of legal action to pursue custody.  See In re M.W., 959 S.W.2d 661, 668
(Tex. App.—Tyler 1997, writ denied).  

Because the statute
requires relinquishment to a nonparent, we review the record for
evidence of voluntary relinquishment after the death of A.D.A.’s mother on June
29, 2010.  Winslett admitted at the hearing that, when she called Addison on
July 9, 2010, to notify him of the mother’s death, he indicated that he wanted
possession of his son and would come to Texas the following week.  When Addison
arrived in Midland on July 17, 2010, and called Winslett, she refused to allow
him to visit A.D.A.  Instead, she demanded that he contact her attorney.  And
when he arrived at Winslett’s home shortly thereafter, Addison witnessed two
people putting two children in a pickup and driving off.  Addison went to the
local police station and was instructed to call back when the child had
returned to the home.  After checking numerous times, the pickup had returned when
he went to the home around 1:30 a.m.; however, Winslett was the legal custodian
and provided police with an order obtained from a previous guardianship
proceeding.  Addison hired a local attorney, filed a writ of habeas corpus, and
also filed a petition in a suit affecting the parent-child relationship, which
is the present case on appeal.  

While there is evidence
that he surrendered care of A.D.A. to A.D.A.’s mother for the first ten years
of his life, we agree with Addison that there is no evidence he intended to
voluntarily relinquish actual care, custody, and control of A.D.A. to a
nonparent at any time.  When he learned that A.D.A.’s mother had died, he
immediately sought possession and legal custody.  Thus, the trial court abused
its discretion when it found that the parental presumption had been rebutted by
evidence of voluntary relinquishment.

Significant Impairment

Winslett argues that
placing A.D.A. in a new and unfamiliar environment would undo A.D.A.’s
developmental progress.  Addison contends that there is no evidence of any acts
or omissions by him that would impair the child and that Winslett proved
nothing more than the fact that she has provided a good and stable environment
for A.D.A., which is insufficient to rebut the parental presumption.  We
agree.  

To deprive a parent of
custody, the nonparent must prove significant impairment by a preponderance of
the evidence.  Tex. Fam. Code Ann.
§ 105.005 (West 2008).  There must be evidence that some “specific,
identifiable behavior or conduct of the parent, demonstrated by specific acts
or omissions of the parent, will” impair the child, either physically or
emotionally.  Critz, 297 S.W.3d at 474 (citing Lewelling, 796
S.W.2d at 167).  Furthermore, the evidence of harm to the child must be more
than “mere surmise or speculation of possible harm.”  May v. May, 829
S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied) (citing Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 

Although courts may
infer future conduct from a parent’s recent, deliberate conduct in a similar
situation, evidence of a parent’s past misconduct or neglect, standing alone,
is insufficient to show that the parent is presently unfit.  De Llano v.
Moran, 333 S.W.2d 359, 361 (Tex. 1960); Guillott v. Gentle, 467
S.W.2d 521, 524 (Tex. Civ. App.—Eastland 1971, writ ref’d n.r.e.).  Usually,
the nonparent must present evidence that shows a parent’s conduct would have a
detrimental effect, such as “physical abuse, severe neglect, abandonment, drug
or alcohol abuse, or very immoral behavior on the part of the parent.”  Gray
v. Shook, 329 S.W.3d 186, 197 (Tex. App.—Corpus Christi 2010), aff’d in
part and rev’d in part, No. 11-0155, 2012 WL 4746236 (Tex. Oct. 5, 2012). 
In Gray, the child’s father was absent for most of the child’s life, and
the maternal grandmother claimed that placing the child with her father would
cause the child to cry, scream, throw up, and wet the bed.  Id. at 191. 
Additionally, the grandmother contended that removing the child could cause her
to be more bossy and affect relationships with her peers.  Id.  A social
worker testified that the vomiting was “possibly” caused by anxiety and that, in
similar situations, “sometimes depression develops, sometimes
they’re at risk for drug use.”  Id. at 198.  Because the only evidence
of possible harm to the child was “the ‘uprooting’ itself—not any specific,
identifiable act or omission, conduct or behavior of [the father],” the court
concluded that it was an abuse of discretion for the trial court to name a
nonparent as sole managing conservator.  Id.  Furthermore, the court
concluded that “[e]vidence of sporadic, past vomiting and the possibility
of negative effects on peer relationships” did not rise above mere speculation
of harm.  Id. 

To prove impairment,
Winslett called Perry Mark Marchioni, Ph.D. to explain A.D.A.’s psychological,
counseling, and special education needs.  Dr. Marchioni described A.D.A. as a
highly functioning autistic child who, although he suffers from mild mental
retardation, has remarkable pronunciation and spelling skills.  Because Dr. Marchioni
has evaluated thousands of children, he felt qualified to predict how a similar
child may respond to being removed from his current home.  However, he qualified
his answer by stating that he has had minimal contact with A.D.A. and explained
how children with developmental disorders might react.  He testified that,
generally, children with developmental disorders either shut down completely or
violently act out.  He then stated that he could not “say that 100 percent of
the time, it is going to be one end of the spectrum or the other, but most
likely reactions are like that.”  When asked to identify physical problems that
might develop, he stated that doing so “would be speculative, at best.”

Dr. Marchioni did agree
that removing A.D.A. from familiar surroundings would be traumatic and could
set him back from where he is today.  But, he found it “hard to believe that he
would never adjust” and that, over time, A.D.A. would “regain whatever he loses
during that period.”  Although Dr. Marchioni agreed that familiar circumstances
would be “a possible better situation,” he again qualified his response when he
explained that he had not examined either party or their homes.  Dr. Marchioni
and Winslett both agreed that anyone could learn the necessary skills to
properly care for A.D.A.

Winslett testified that, on one
occasion, A.D.A. “pooped in his pants once and he peed twice” before they arrived
at court and saw his father.  But, she later stated that A.D.A. “has accidents
when he gets very anxious and nervous.”  Winslett alleged that A.D.A. would
suffer from separation anxiety and nervousness; she did not allege any harm
that would be caused by Addison.  Winslett testified on cross-examination as
follows: 

Q:  I’m -- let
me see if I understand.  It’s still your position, I’m sure, that you think it
would be in [A.D.A.]’s best interest for him to stay with you?

A:  Yes, sir.

Q:  And is that
because of your fear that if he were deprived of you, that he would have some
anxiety and suffer some harm because of being separated from you?

A:  Yes, sir.

Q:  Is that
because of your fear that he would be going to a place that he doesn’t know?

A:  Yes, sir.

Q:  All right. 
What do you actually know about where [Addison] lives?

A:  I don’t know
anything about Mr. Murry Addison.

Q:  Okay.  You
don’t know -- do you know anything about his family?

A:  I do not.

Q:  What do you
know about the school system in and around where he lives?

A:  Why would I
even look up that?  No, I don’t.

Q:  You know
nothing, is what you are saying?

A:  Nothing.    




 

Absent evidence of a
specific act or omission by Addison that would cause harm, the parental
presumption cannot be overcome.  We find no such evidence in the record.  The
harm revealed by the record is similar to the mere speculative harm in Gray.
 A.D.A.’s accidents were not caused by Addison but by anxiety and nervousness. 
The only harm to the child is the “uprooting” itself rather than some conduct
by the parent.  In fact, the trial court expressly stated that its judgment was
“really not a reflection on you, sir; it is on the circumstances of the child. 
I think it would be emotionally damaging [to remove A.D.A.] from his present
environment.”  The relationship between a parent and child is protected by the
statutory presumption that custody by the natural parent is in the best
interest of the child.  Before a court awards custody to a nonparent, there
must be evidence of conduct or actions of the parent that cause harm to the
child.  See Lewelling, 796 S.W.2d at 167.  Thus, the trial court abused
its discretion when it found that appointing Addison as sole managing
conservator would significantly impair the child’s physical health or emotional
development.  

Because there was no
evidence of voluntary relinquishment of care to a nonparent and no evidence of
acts or omissions by Addison that would significantly impair A.D.A., Winslett failed
to meet her burden to rebut the parental presumption.  Addison’s issues on
appeal are sustained.  Although we would usually reverse and render when we
sustain a legal sufficiency challenge, we are permitted to remand such cases as
this when further proceedings are necessary and when the interest of justice so
requires.  Tex. R. App. P. 43.3; Shook
v. Gray, No. 11-0155, 2012 WL 4746236 (Tex. Oct. 5, 2012).

In his prayer for
relief, Addison asked us to remand for entry of orders with regard to
possessory conservatorship and access to the child.  When it appoints a
managing conservator, the trial court has discretion to appoint possessory
conservators and award visitation rights.  Tex.
Fam. Code Ann. § 153.006 (West 2008).  In light of this request,
the amount of time that has passed since the hearing, and the supreme court’s
recent opinion in Shook, we remand this case to the trial court for
further consideration.  See Shook, 2012 WL 4746236, at *2 (remanding for
trial court to reconsider conservatorship).




 

The order of the trial
court is reversed, and the cause is remanded for further proceedings.

 

 

Jim R. Wright

                                                                                                Chief
Justice

 

October 18, 2012

Panel[1] consists
of: Wright, C.J.,

McCall,
J., and Hill.[2]

 









                [1]Eric
Kalenak, Justice, resigned effective September 3, 2012.  The justice position
is vacant pending appointment of a successor by the governor or until the next
general election.

 





                [2]John G. Hill,
Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth,
sitting by assignment.