**Opinion filed September 29, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00084-CV
_____

## IN THE INTEREST OF C.P., A CHILD

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV 16-02-042**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the mother and the father of C.P. The mother appeals. On appeal, she presents one evidentiary issue and four sufficiency issues. We affirm.

In her first issue, Appellant asserts that the trial court abused its discretion when it took judicial notice of the affidavit in support of removal, which was attached to the original petition filed by the Department of Family and Protective Services. The record from the termination hearing reflects that the Department requested the trial court to "take judicial notice of all of the information contained in the court file, but specifically the affidavit that is attached to the original petition."

The trial court stated that it would take judicial notice of the court's file and of all the prior hearings. Appellant did not object to the Department's request or to the trial court's taking of judicial notice. Because Appellant did not object at trial, she did not preserve her complaint for appellate review. *See* TEX. R. APP. P. 33.1; *In re Estate of Downing*, 461 S.W.3d 231, 240 (Tex. App.—El Paso 2015, no pet.); *In re M.W.*, 959 S.W.2d 661, 664 (Tex. App.—Tyler 1997, writ denied). Appellant's first issue is overruled.

In her next four issues, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings in support of termination. Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the

child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that Appellant committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child. Appellant challenges each of these findings.

The record shows that the Department became involved with C.P. and her family in 2014 when C.P. was three years old. C.P. is a special needs child with serious medical concerns. C.P. has been diagnosed with myotonic muscular

dystrophy, fluid on the brain, tendon tightness in her legs, and respiratory problems. She also has a G-button through which she is fed. Prior to removal, the parents were offered services by the Department to help them parent C.P. These services included a home health nurse for several hours every day over a period of one and one-half years.

The Department ultimately removed C.P. from Appellant's care. The conservatorship caseworker testified at the final hearing that Appellant did not understand the severity of C.P.'s medical condition, that Appellant was not capable of meeting C.P.'s needs, and that C.P. would be in danger if returned to Appellant. A member of Appellant's family also expressed concerns that Appellant cannot take care of C.P.

C.P. missed many doctor's appointments while in Appellant's care. Additionally, when the nurse was away, Appellant failed to properly take care of C.P. The conservatorship caseworker testified about one occasion when the nurse returned from vacation: C.P. was filthy and had lice; her diaper was not being changed; and feedings had been missed. At times, Appellant lived with people that smoked in the home even though C.P. cannot tolerate smoke. At some point while this case was pending, Appellant "took off" with a boyfriend and left C.P. with C.P.'s father even though the Department had told Appellant not to leave C.P. with her father because he did not properly take care of C.P. Appellant moved numerous times while this case was pending.

Appellant, who has a limited mental capacity, was unable to read the parenting packet, and even when the parenting packet was read to her by her therapist, Appellant was unable to comprehend what she was being told by her therapist. Like C.P., Appellant suffers from myotonic muscular dystrophy. The record reflects that Appellant did not attend the final hearing and that, at two previous hearings, Appellant appeared at the courthouse and suffered from some sort of seizure or

intense panic attack. On both occasions, EMS took Appellant to the hospital. The trial judge expressed his concern about these episodes and about the potential danger to C.P. if she were returned to Appellant. The record from the final hearing revealed that a seizure medication had been prescribed for Appellant; however, Appellant refused to take it, insisting that she did not have seizures.

At the time of trial, C.P. lived in a medical foster home and was doing well there. C.P.'s foster mother was a nurse, and all of C.P.'s needs were being met in the care of the foster parents. The foster parents expressed a desire to care for C.P. long-term and to adopt her at some point in the future. The conservatorship caseworker believed that termination of Appellant's parental rights would be in C.P.'s best interest.

The record contains clear and convincing evidence that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being—as required to support a finding under Section 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

The record revealed numerous instances in which Appellant endangered C.P., such as missing many doctor's appointments, inappropriately feeding or otherwise

taking care of C.P., living with someone who smoked in the home, and refusing to take her seizure medication. We hold that the evidence is legally and factually sufficient to support the finding under subsection (E), and we overrule Appellant's third issue. Because it must be shown that the parent has committed only one of the acts listed in Section 161.001(b)(1)(A)–(T), we need not reach the merits of Appellant's second and fourth issues. *See* TEX. R. APP. P. 47.1.

In her final issue, Appellant challenges the sufficiency of the evidence in support of the trial court's best interest finding. Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. The trial court could reasonably have formed a firm belief or conviction that it would be in C.P.'s best interest for her mother's parental rights to be terminated. The evidence at trial showed that Appellant was not capable of meeting C.P.'s needs. C.P. is in a safe, appropriate placement in a medical foster home with foster parents who want to provide long-term care for C.P. and eventually adopt her. We hold that the evidence is both legally and factually sufficient to support the trial court's best interest finding. We overrule Appellant's fifth issue.

We affirm the trial court's order of termination.


JIM R. WRIGHT
CHIEF JUSTICE

September 29, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6