

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00475-CV

**IN THE INTEREST OF G.E.T.**

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00671
Honorable Laura Salinas, Judge Presiding

Opinion by: Liza A. Rodriguez, Justice

Sitting: Rebeca C. Martinez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: January 2, 2020

REVERSED AND REMANDED

Appellant Father R.T.[1] appeals the trial court's final order designating him as only a possessory conservator rather than a managing conservator of his daughter G.E.T. and requiring supervised visitation. Based on the lack of evidence to rebut the statutory parental presumption, we reverse the trial court's order and remand for further proceedings in the trial court.

### BACKGROUND

The child that is the subject of this case, G.E.T., was born in April 2016. The relationship between her mother D.B. and her father R.T. ended in August 2017. In October 2017, the Department of Family and Protective Services began offering Family Based Safety Services to

---

[1] To protect the identity of the minor child, we refer to the parties by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

G.E.T.'s parents based on concerns about drug use and domestic violence. In April 2018, the Department petitioned for removal of G.E.T., then two years old, based on concerns related to the mother's drug use, current boyfriend M.G., and allegations of physical abuse against his daughter. After G.E.T. was removed, the Department was designated as temporary managing conservator and G.E.T. was placed with D.T., the ex-wife of R.T. with whom he had two teenage daughters. G.E.T. made good developmental progress and bonded with D.T. and her daughters during the year she lived with them. During the pendency of the case, the maternal grandmother E.C. filed a petition in intervention seeking managing conservatorship of G.E.T. or, alternatively, possessory conservatorship. D.T. also filed a petition in intervention seeking appointment as managing conservator with the intent to adopt G.E.T. At the time of trial, the Department was seeking termination of the parental rights of the mother D.B. only.

At the bench trial held in April 2019, the Department caseworker Valerie Mendiola testified that R.T. fully completed every requirement of his service plan including drug assessment and domestic violence classes, never tested positive for drugs during the case, and maintained appropriate and consistent visits with G.E.T. The Department had "no concerns" with R.T. and his parental abilities and was not seeking termination of his parental rights. D.B., on the other hand, failed to fully comply with her service plan, tested positive for multiple types of drugs on several occasions, and failed to submit to hair follicle tests on multiple other occasions. Mendiola testified the reason for G.E.T.'s removal was due to D.B.'s actions, not those of R.T. With respect to the maternal grandmother E.C., the Department had initial concerns about her suitability to care for G.E.T. based on a negative home study as well as D.B.'s accusations of physical abuse, neglect, and alcoholism against E.C. At the beginning of the case, D.B. did not want E.C. to have access to her daughter. After E.C. intervened in the case, D.B. "changed her story" and stated she lied about the accusations because she was mad at her mother. Mendiola testified that D.B. consistently

lied during the case, and noted that R.T. expressed the same concerns about E.C. and the volatile relationship between her and D.B. The Department's recommendation at the end of trial was that R.T. be designated as joint managing conservator of G.E.T. along with D.T., the current foster mother.

D.B., twenty-one years old at the time, testified and admitted to having a current substance abuse problem; in fact, she was set to enter the SAFP[2] program for 90 to 180 days due to a felony probation violation. As noted, D.B. gave conflicting testimony about her mother E.C. and the character and stability of their relationship. D.B. moved out of E.C.'s home when she was 13 years old and subsequently went back and forth between her sister's home and E.C.'s home. D.B. renewed her relationship with E.C. in October 2018, and testified at trial that she had "exaggerated" or lied about the problems with E.C. and wanted her to be named managing conservator of G.E.T. As to her relationship with R.T., D.B. testified she was 17 years old when the relationship began and R.T. was 39 years old; he knew D.B.'s age. D.B. stated she began using drugs in 2015 and smoked marijuana with R.T. D.B. also claimed that R.T. introduced her to methamphetamine and cocaine, but that he did not use those drugs himself. D.B. testified that she called the police several times complaining of domestic violence by R.T.; however, she stated he was never arrested and she did not seek a protective order. When asked specific questions characterizing the domestic violence, D.B. agreed that R.T. "hit her with his hand," "pulled her hair," and "threw her to the ground." Her relationship with R.T. ended in August 2017. D.B stated she entered into a relationship with a new boyfriend, M.G., in August 2017 which lasted through March 2018 when G.E.T. was removed by the Department. D.B.'s counselor testified she told him her relationship

---

[2] Substance Abuse Felony Punishment facility.

with M.G. ended in October 2018. During that time period, D.B. admitted she was using heroin and morphine.

Both intervenors, D.T. and E.C., also testified. Maternal grandmother E.C. testified she did not support the relationship between D.B. and R.T., referring to him as a "predator" who caused her 17 year-old daughter to run away from home. E.C. stated she did not welcome R.T. into her home and he only came there two times, which was contrary to D.B.'s testimony that she and R.T. stayed at E.C.'s home sometimes and at one point traveled together. E.C. stated that D.B. and R.T. were together for two years before she learned his true age. E.C. denied being in a currently abusive relationship, testifying that she left an abusive marriage when D.B. was four years old, and since then had worked full-time, provided a home for her family, and successfully raised three other children all of whom were successful adults with no criminal history. E.C. denied being associated with a gang, using drugs, or excessively consuming alcohol. E.C. herself disclosed that she was the person who called CPS in October 2017 after she found D.B. and her boyfriend M.G. smoking marijuana in her home with G.E.T. in the room. E.C. stated she had been in G.E.T.'s life since she was born and wanted to have custody of G.E.T. Of particular concern to the child's attorney ad litem and the Department, E.C. denied that G.E.T. was developmentally delayed before she was placed with D.T.

D.T. testified that she and R.T. divorced when their twin daughters were two years old. D.T. testified there was never any physical or verbal abuse during her marriage to R.T., although he did have an affair which she felt was emotional abuse. R.T. consistently stayed present in his daughters' lives and paid child support. Their daughters were 18 years old at the time of trial, were bonded to G.E.T., and planned to attend college locally so they could help care for G.E.T. D.T. testified she had no concerns about R.T.'s parental ability with their twin daughters or with G.E.T. D.T. admitted knowing that R.T. sometimes used marijuana during their marriage but did

not know whether he had continued to use it after they divorced. Her relationship with G.E.T.'s mother D.B. was initially good but degenerated after D.B. began communicating with E.C. in October 2018. D.T. testified that G.E.T. had bonded with her and her daughters and she sought managing conservatorship of G.E.T.

At the conclusion of the evidence, child's the attorney ad litem requested that R.T. and D.T. be designated as joint managing conservators of G.E.T. based on the child's present and future emotional and physical needs. The Department and R.T.'s counsel joined in that request. Counsel for E.C. and D.B. requested that E.C. be designated as managing conservator of the child. The trial court's final order appointed E.C. as sole managing conservator of G.E.T., the parents D.B. and R.T. as possessory conservators with visitation to be supervised by E.C. and D.T., respectively. R.T. appeals.

## MANAGING CONSERVATORSHIP

In his first issue, R.T. challenges the sufficiency of the evidence to rebut the statutory presumption that awarding managing conservatorship to a parent, in this case the father, serves the child's best interests.

### *Standard of Review*

We review a trial court's decision regarding conservatorship of a child for an abuse of discretion, reversing only if the decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re I.G.W.*, No. 04-17-00161-CV, 2018 WL 3265292, at *1 (Tex. App.—San Antonio July 5, 2018, no pet.). The best interest of the child is the primary consideration in determining conservatorship and possession of the child. TEX. FAM. CODE ANN. § 153.002; *In re J.A.J.*, 243 S.W.3d at 614. In general, the trial court has broad discretion in determining the child's best interest. *In re J.D.D.*, No. 04-08-00930-CV, 2009 WL 2778660, at *1 (Tex. App.—San Antonio Sept. 2, 2009, pet. denied).

Although legal and factual sufficiency of the evidence are not independent grounds for challenging a conservatorship determination, they are relevant factors in considering whether the trial court abused its discretion. *Id.* In reviewing the evidence, we consider all the evidence admitted at trial and defer to the trial court's resolution of the underlying facts and its credibility assessments that may have affected its decision; we may not substitute our judgment for that of the trial court. *Id.* A trial court does not abuse its discretion if it bases its decision on conflicting evidence. *In re I.G.W.*, 2018 WL 3265292, at *1. As long as there is "some evidence of substantive and probative character" to support the trial court's decision, it does not abuse its discretion. *Id.*; *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

### *Analysis*

There is a rebuttable presumption in Texas law that the best interest of a child is served by a parent being appointed managing conservator. *In re J.A.J.*, 243 S.W.3d at 614; *In re V.L.K*, 24 S.W.3d 338, 341 (Tex. 2000). The parental presumption is codified in section 153.131 of the Family Code which provides that a parent, or both parents, must be appointed sole managing conservator(s) "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a). The quantum of proof required to support such a finding is preponderance of the evidence. *In re J.A.J.*, 243 S.W.3d at 616; TEX. FAM. CODE ANN. § 105.005. The trial court's written order contains a finding that appointment of either R.T. or D.B. as managing conservator would significantly impair G.E.T.'s physical health or emotional development. Therefore, we must determine on appeal whether the trial court abused its discretion in making such finding with respect to R.T.

The requirement that a nonparent prove that appointment of the parent as managing conservator would significantly impair the child's physical or emotional development imposes a heavy burden on the nonparent to rebut the parental presumption. *In re T.R.B.*, 350 S.W.3d 227, 233-34 (Tex. App.—San Antonio 2011, orig. proceeding). "To meet this burden, the nonparent must present evidence of 'specific, identifiable behavior or conduct of the parent,' as shown by 'specific acts or omissions,' and evidence that such acts or omissions 'will probably cause that harm.'" *In re S.M.D.*, 329 S.W.3d 8, 16 (Tex. App.—San Antonio 2010, pet. dism'd); *In re I.G.W.*, 2018 WL 3265292, at *2 (nonparent petitioner must "offer evidence of specific actions or omissions" by the parent that demonstrate awarding custody to the parent would result in physical or emotional harm to the child) (quoting *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990)). The evidence must be sufficient to support a logical inference that the parent's specific, identifiable behavior will probably result in the child's emotional or physical impairment. *In re S.M.D.*, 329 S.W.3d at 16. Evidence that merely raises a surmise or speculation of *possible* harm does not meet the burden. *Id.* Further, evidence of past misconduct alone is not sufficient to prove the parent is presently unsuitable to have custody. *Id.*; *In re M.W.*, 959 S.W.2d 661, 666 (Tex. App.—Tyler 1997, pet. denied) (when determining a parent's fitness, the material time to consider is the present, while keeping in mind that future conduct may be somewhat determined by recent past conduct). Evidence showing that the nonparent would be a better custodian of the child or has a strong, on-going relationship with the child also will not suffice to rebut the parental presumption. *In re S.M.D.*, 329 S.W.3d at 16; *In re J.C.R.*, No. 04-18-00949-CV, 2019 WL 2110109, at *7 (Tex. App.—San Antonio May 15, 2019, pet. denied). The nonparent must affirmatively prove by a preponderance of the evidence that appointing the parent as managing conservator "would significantly impair" the child's well-being, either physically or emotionally. *Lewelling*, 796 S.W.2d at 167. Finally, "[t]he Supreme Court has recognized that '[w]hile trial

courts should be afforded broad discretion in deciding family law questions, the Legislature has explicitly limited the exercise of that discretion when a nonparent seeks appointment as managing conservator.'" *In re T.R.B.*, 350 S.W.3d at 234 (quoting *Lewelling*, 796 S.W.2d at 168).

Here, the evidence was undisputed that: R.T.'s behavior was not the reason for the child's removal; he fully completed all requirements of his service plan; he never tested positive for drugs during the case; and he maintained appropriate and consistent visits with G.E.T. The Department affirmatively stated it had "no concerns" about his parental ability to care for G.E.T. and both the Department and the child's attorney ad litem were in favor of R.T. being designated as a joint managing conservator with D.T. as being in the child's best interests. The only negative evidence about R.T. came from D.B. and her mother E.C. As noted, there were inconsistencies in the trial testimony of both D.B. and E.C. There was no evidence to corroborate D.B.'s testimony that R.T. was a drug user and engaged in physical violence against her such as positive drug tests, police reports, arrests, or convictions.[3] However, deferring to the trial court's assessment of credibility and giving credence to D.B.'s and E.C.'s testimony, such evidence only goes to show past misconduct by R.T. which by itself is insufficient to rebut the parental presumption. *See In re S.M.D.*, 329 S.W.3d at 16; *see also In re M.W.*, 959 S.W.2d at 666. D.B. repeatedly testified her relationship with R.T. ended in August 2017, which was prior to the Department's first involvement with G.E.T. in October 2017. Further, it was undisputed that the Department became involved due to D.B.'s actions, not any behavior by R.T., and R.T. completed every requirement necessary to establish his ability to safely care for G.E.T. We note that the trial court expressed concern on the record about the age difference between D.B. and R.T. That factor alone does not

---

[3] The record does show that R.T. had one prior conviction for possession of marijuana in 2006 to which he pled no contest.

constitute sufficient evidence to show that placing the child with R.T. would significantly impair her well-being.[4]

Viewing the record as a whole and deferring to the trial court's role as factfinder, we conclude that the evidence is insufficient to support a logical inference that any specific, identifiable behavior by R.T. "will significantly impair the child's physical health or emotional development." *See In re S.M.D.*, 329 S.W.3d at 16; *see also In re I.G.W.*, 2018 WL 3265292, at *2. We therefore hold that, in this case, the statutory presumption in favor of the father being designated a managing conservator of the child was not rebutted by a preponderance of the evidence and the trial court abused its discretion in designating the maternal grandmother E.C. as the managing conservator of G.E.T. *See* TEX. FAM. CODE ANN. § 153.131(a); *see also In re T.R.B.*, 350 S.W.3d at 233-34 (heavy burden to rebut parental presumption).

## CONCLUSION

Based on the foregoing analysis, we reverse the trial court's final order signed on June 20, 2019 and remand for further proceedings consistent with our opinion. Based on our disposition of R.T.'s first issue, we need not reach his second issue challenging the requirement of supervised visitation.

Liza A. Rodriguez, Justice

---

[4] Some reference was made on the record about R.T. having a back injury. However, no testimony or medical records were introduced concerning a back injury or any other physical limitation by R.T. that would impair his ability to care for G.E.T.