**Opinion issued November 29, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-10-00963-CV

————————————

### JESSICA BHAN, Appellant

### V.

### BRYAN JAMES DANET AND WILLIAM TODD KRANZ, Appellees

On Appeal from the 313th Judicial District Court
Harris County, Texas
Trial Court Case No. 2007-60263

## OPINION DISSENTING FROM DENIAL OF EN BANC RECONSIDERATION

I respectfully dissent from the denial of en banc reconsideration in this case.

The panel finds the evidence legally insufficient to support the trial court's order

granting sole managing conservatorship of a thriving six-year-old child to the

foster parents, appellees Bryan Danet and Todd Kranz. Danet and Kranz have

raised J.A.B. since Children's Protective Services ("CPS") took him from his drug-abusing mother, appellant Jessica Bhan, at the age of seven months following an episode of family violence. When he was removed from Bhan's custody, J.A.B. had a severe diaper rash and was "starving." Bhan spent the weekend taking cocaine with a stranger in a hotel room, and she then moved to Wisconsin and did not attempt to contact J.A.B for more than six months, until after CPS initiated termination proceedings. There is no evidence that her lifestyle has since changed. Rather, the record shows that Bhan has a history of drug abuse, alcohol abuse, arrests and convictions, promiscuity, indigence, and neglect and endangerment of J.A.B. She has seen J.A.B. only sporadically in supervised situations since he was seven months old. Although she has completed a few parenting courses, she has produced no evidence that she completed her Family Services Plan, that she no longer has problems with drug and alcohol abuse, that she can support herself, that she is no longer promiscuous, that she has stable employment, that she has a stable home herself or can provide one for J.A.B., or that she can and will otherwise provide for J.A.B's physical and emotional welfare. It is undisputed that J.A.B.'s foster parents, Danet and Kranz, have provided a loving and stable home for J.A.B. and that he is thriving in their care.

Despite these facts, the panel reverses the trial court's order on the jury verdict that granted joint managing conservatorship of J.A.B. to Danet and Kranz

2

and denied possession to Bhan, with access at Danet and Kranz's discretion. The panel then awards sole managing conservatorship to Bhan, who plans to remove J.A.B. immediately from the state and take him to live with herself and her mother in public housing in Wisconsin. Bhan's mother, according to Bhan's testimony, is in ill health and without economic resources and therefore has not visited J.A.B.; and she did not intervene or otherwise participate in the conservatorship proceedings. Bhan testified that she herself had been working prior to traveling to Houston for the trial, but she did not know whether she would still have a job when she got back to Wisconsin. The circumstances into which J.A.B. is to be taken and Bhan's plans and capacity to provide for his present and future physical and emotional welfare are otherwise entirely unknown to the appellate court.

In my view, the panel incorrectly applies both the standard of proof and the standard of evidentiary review in conservatorship cases. It misconstrues the scope of relevant evidence both at trial and on appeal, and it erroneously ignores the jury's findings and the trial court's mandatory entry of judgment on those findings and substitutes itself for the finder of fact and trial judge. Nor does the case law it relies upon support its rulings. The result is that this case conflicts with similar cases from our sister appellate courts, the Texas Supreme Court, and the governing statutes.

3

I am particularly troubled because I believe the panel's judgment directly contravenes the purpose and provisions of Family Code Chapter 153, governing suits affecting conservatorship and possession of and access to a child, and other controlling law, and it sets a very bad precedent for this Court in deciding such cases. This is especially the case when, as here, a child has been removed from the custody of a parent by CPS for abuse or neglect, and CPS has ultimately decided not to move to terminate the parent's rights to the child but, instead, to place the child in a safe and nurturing environment until the parent's circumstances are substantially changed for the better or termination becomes clearly appropriate, rather than to retain the child in its own custody with all the attendant uncertainties. With respect to this particular case, I believe the panel's judgment is contrary to J.A.B.'s best interest and, if put into effect, will have the immediate and foreseeable result of returning him to the sole managing custody of a parent whose history and pattern of neglect of J.A.B. has not materially changed since he was removed from her care at the age of seven months, and that is foreseeably certain to significantly impair his emotional development or physical health.

Texas Rule of Appellate Procedure 41.2 provides, "En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration." TEX. R. APP. P. 41.2(c). This case merits en banc

4

review on both grounds. Therefore, I respectfully dissent from the denial of en banc reconsideration.

I would affirm the order of the trial court, entered on the jury verdict, appointing Danet and Kranz as the sole managing conservators of J.A.B and denying Bhan possession of J.A.B.[1]

## Background

The panel opinion contains many of the facts necessary to decide the case. The following facts are added to supplement, and, in some respects, correct its statement of relevant facts.

On March 31, 2006, when J.A.B. was seven months old, CPS removed him from Bhan's custody and placed him in the foster care of Danet and Kranz. CPS sought termination of Bhan's parental rights. Apparently CPS decided, however, instead of terminating Bhan's parental rights, to attempt to preserve those rights by imposing a Family Service Plan, the successful completion of which would permit her to regain conservatorship of J.A.B. The termination suit was scheduled to be heard or dismissed on October 2, 2007. On that date, Danet and Kranz filed this suit affecting the parent-child relationship ("SAPCR"), seeking appointment as J.A.B.'s joint managing conservators until a hearing could be held on permanent custody. Although there is evidence in the record that, since J.A.B.'s removal,

---

[1]  *See* TEX. FAM. CODE ANN. § 153.005 (Vernon 2008).

Bhan completed several parenting courses, there is no evidence in the record that she fully complied with her Family Services Plan.

The trial court entered agreed temporary orders on May 9, 2009, naming Danet and Kranz nonparent joint managing conservators and Bhan a possessory conservator with supervised visitation rights twice a month. At the time the case was ordered to trial, over repeated motions for continuances and delays by Bhan's trial counsel, Danet and Kranz's motion seeking to hold her in contempt for failure to pay court-ordered child support was pending.

The jury heard testimony at trial which established that Joseph Alaniz, the person originally presumed to be J.A.B.'s father and with whom J.A.B. and Bhan were living when CPS removed J.A.B., is not J.A.B.'s father; and he has never had any further contact with J.A.B. In the year between the time J.A.B. was removed from Bhan's custody and the time CPS decided not to seek termination of Bhan's parental rights and Danet and Kranz filed this suit, seeking to be named managing conservators of J.A.B., Bhan saw J.A.B. infrequently, and she missed scheduled visitations and a court date, had another child by Alaniz, and had domestic violence committed against her by Alaniz, posing the threat of danger to J.A.B. should he be returned to her care at that time. The evidence further revealed that in the years intervening since Danet and Kranz were awarded temporary custody of J.A.B., Bhan has had an ongoing history of drug and alcohol abuse and

6

promiscuity, she has neglected to keep scheduled visits with J.A.B., and she has neglected him even when she kept scheduled visits. At trial, Bhan demonstrated no plans to provide J.A.B. with a stable and nurturing home. Rather, she testified that she intends to take him out of state to live in public housing in Wisconsin with herself and her invalid mother, who took no part in these proceedings and whose contact with J.A.B. at any time in his life, if any, is not reflected in the record. Bhan is uncertain whether she will have a job when she gets back to Wisconsin with J.A.B. Danet and Kranz both testified that they loved J.A.B. and treated him as their own son and that J.A.B. was a happy, secure little boy who had bonded with them and treated them as his parents. This testimony was uncontroverted.

At trial, the jury was correctly instructed that "[t]he best interest of the child shall always be the primary consideration in determining questions of conservatorship," and it was properly instructed in the non-exhaustive list of factors to determine a child's best interest, commonly known as the *Holley* factors, namely:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individual seeking custody;

(5)    the programs available to assist the individual to promote the best interest of the child;

(6)    the plans for the child by the individual or by the agency seeking custody;

(7)    the stability of the home or proposed placement;

(8)    the acts or omissions of the parent, or potential conservator, that may indicate that the existing relationship is not a proper one; and

(9)    any excuse for the acts or omissions of the parent or potential conservator.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors often used for determining best interest of child); *see also In re Doe 2*, 19 S.W.3d 278, 282 n.20 (Tex. 2000) (recognizing that intermediate appellate courts use *Holley* factors to ascertain best interest of child in conservatorship cases).

The jury was likewise correctly instructed on the nature of possessory and managing conservatorship of parents and nonparents, the presumption in favor of the biological parent retaining custody, and the evidence required to rebut the presumption and to determine conservatorship. It was instructed, "The biological parent shall be appointed sole managing conservator, in preference to a non-parent, unless appointment of the biological parent would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *See* TEX. FAM. CODE ANN. § 153.131(a) (Vernon 2008). It was also instructed that the term "'Significantly Impair' means

8

the non-parent must affirmatively prove by a preponderance of the evidence through specific actions or omissions of the parent that demonstrate that an award of custody to the parent would result in physical or emotional harm to the child." Finally, the jury was instructed that if it found that Danet and Kranz should be appointed joint managing conservators, Bhan should be appointed a possessory conservator unless it found by a preponderance of the evidence that her appointment was not in the best interest of J.A.B. and would endanger his physical or emotional welfare.

The jury found that it was in the best interest of J.A.B. that Danet and Kranz be appointed joint managing conservators. It further found, by a preponderance of the evidence, that appointment of Bhan as possessory conservator was "not in the best interest of the child and that possession or access by [Bhan] would endanger the physical or emotional welfare of the child" and that, therefore, Bhan should not be appointed possessory conservator of J.A.B.

In its final order, the trial court recited the jury's finding that "appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development" and its finding that "appointment of JESSICA BHAN as a possessory conservator would not be in the best interest of the child." It appointed Danet and Kranz joint managing conservators of J.A.B. and gave them discretion

9

over "[a]ny possession and access to the child by JESSICA BHAN" until J.A.B. turns eighteen years old.

The panel reverses all of the determinations of the jury and the trial court, and it appoints Bhan as sole managing conservator of J.A.B.

## Standards of Proof and Review in Conservatorship Proceedings

*1.    Legislative Intent in Conservatorship Proceedings:  Texas Family Code Section 153.002, Best Interest of the Child*

The public policy of this state with respect to conservatorship, possession, and access is to "assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child" and to "provide a safe, stable, and nonviolent environment for the child."  TEX. FAM. CODE ANN. § 153.001 (Vernon 2008).  Therefore, the Legislature has mandated that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002 (Vernon 2008).

*2.    Standard of Review in Conservatorship Proceedings*

It is worth emphasizing that this is a conservatorship proceeding, not a termination proceeding.  "The termination of parental rights and the appointment of a non-parent as sole managing conservator are two separate and distinct issues, each requiring different elements to be proven, different standards of proof, and different standards of review." *Mann v. Dep't of Family & Protective Servs.*, No.

10

01-08-01004-CV, 2009 WL 2961396, at *14 (Tex. App.—Houston [1st Dist.] Sept. 17, 2009, no pet.) (mem. op.); *cf.* TEX. FAM. CODE ANN. § 153.131(a) (Vernon 2008) (providing presumption that biological parent is to be named managing conservator), § 161.001 (Vernon Supp. 2012) (providing grounds for termination of parent-child relationship); *see also In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007).

The Texas Supreme Court set out the differences between the two types of proceedings in *In re J.A.J.* "First, the elements necessary to terminate parental rights may differ from the factors that must be taken into account when deciding who should be appointed a child's managing conservator." *In re J.A.J.*, 243 S.W.3d at 615. Family Code section 161.001(1) requires a court to find one or more of the nineteen criteria listed in the section and defines "with some precision" specific parental conduct that may justify termination. *Id.* Section 153.131(a), by contrast, imposes a more general standard for determining managing conservatorship that "does not enumerate specific acts or omissions by the parent, but instead requires the court to find that appointing a parent would not be in the child's best interest because it would 'significantly impair the child's physical health or emotional well-being.'" *Id.* at 616 (quoting TEX. FAM. CODE ANN. § 153.131(a)). Thus, the evidence may be insufficient for termination under section 161.001(1) while "still support[ing] the determination that appointment of a

11

parent as conservator would impair the child's physical health or emotional development for reasons unrelated to the section 161.001(1) criteria." *Id.*

These differing standards of proof affect the method of appellate review, which is more stringent for termination cases than for conservatorship cases. *Id.* Due process concerns arising from the permanency of termination require that a termination decision be supported by "clear and convincing evidence." *Id.* In evaluating the factual sufficiency of the evidence to support termination, the appellate court must consider "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations," and legal-sufficiency review is conducted under a "similarly heightened" standard. *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *see also In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (describing how clear and convincing standard impacts legal-sufficiency review in termination cases).

By contrast, "a finding that appointment of a parent as managing conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard." *In re J.A.J.*, 243 S.W.3d at 616. "A party is entitled to a jury trial on the issue of appointment of a managing conservator . . . ." *In re D.A.*, 307 S.W.3d 556, 561 (Tex. App.—Dallas 2010, no pet.) (citing Tex. Fam. Code Ann. § 105.002). And the trial court may not enter an order in contravention of the jury's verdict. *In re J.A.J.*, 243 S.W.3d at

12

616 n.5 (citing TEX. FAM. CODE ANN. § 105.002(c)(1)(A)); *In re D.A.*, 307 S.W.3d at 561. The jury's findings underlying a conservatorship decision are subject to ordinary legal and factual sufficiency review on appeal, rather than the clear and convincing standard applicable to termination proceedings. *In re J.A.J.*, 243 S.W.3d at 616 n.5; *In re D.A.*, 307 S.W.3d at 561.

Finally, conservatorship determinations are "subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d at 616. "The trial court is given wide latitude in determining the best interests of a minor child." *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). Thus, to determine whether a trial court abused its discretion, the appellate court must decide whether the court acted without reference to any guiding rules or principles, that is, whether its decision was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *In re M.M.M.*, 307 S.W.3d at 849. "An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence." *In re M.M.M.*, 307 S.W.3d at 849 (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding)). Nor does an abuse of discretion occur so long as there is some evidence of substantive and probative character to support the trial court's decision. *Id.* (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002)).

Moreover, the trial court retains jurisdiction to modify a conservatorship order when it is in the child's best interest and the parent's circumstances have changed materially and substantially. *In re J.A.J.*, 243 S.W.3d at 617; *see* TEX. FAM. CODE ANN. §§ 156.001 (Vernon 2008) (providing that court with continuing exclusive jurisdiction may modify order providing for conservatorship, support, possession of, or access to child), 156.101 (Vernon Supp. 2012) (providing grounds for modifying order establishing conservatorship or possession and access). And a parent has standing to sue to modify a conservatorship order. *In re J.A.J.*, 243 S.W.3d at 617; *see* TEX. FAM. CODE ANN. §§ 156.002 (Vernon Supp. 2012) (stating that person who has standing to sue under Chapter 102 may file suit for modification), 102.003(a)(1) (Vernon Supp. 2012) (providing that parent has standing to file original custody suit). This is not the case with termination, which is permanent and irrevocable. *In re J.A.J.*, 243 S.W.3d at 616.

In conducting a legal sufficiency review in conservatorship cases, an appellate court reviews all the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could do so and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing a no-evidence point, the appellate court must view evidence in the light that tends to support the finding of the disputed fact, and it must disregard all evidence and inferences to contrary.

14

*Lenz v. Lenz*, 79 S.W.3d 10, 13–14 (Tex. 2002); *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990); *In re D.A.*, 307 S.W.3d at 561. The appellate court will sustain a legal-sufficiency or "no-evidence" challenge if the record shows (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. Thus, the court will sustain a legal sufficiency challenge only when the evidence is "so weak as to do no more than create a mere surmise or suspicion." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). "'[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *In re D.A.*, 307 S.W.3d at 561.

If the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *City of Keller*, 168 S.W.3d at 822. However, if the evidence would enable reasonable and fair-minded people to differ in their conclusions, then the fact-finder must be allowed to do so. *Id.* A reviewing court cannot substitute its judgment for that of the fact-finder, so long as the evidence

15

falls within this zone of reasonable disagreement. *Id.* The trial court is in a better position to decide custody cases because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

Thus, to determine legal sufficiency of the evidence in this conservatorship case, we must determine whether more than a scintilla of evidence exists to support the jury's findings that appointment of Danet and Kranz as joint managing conservators was in J.A.B.'s best interest and that appointment of Bhan as possessory conservator was "not in the best interest of the child and that possession or access by [Bhan] would endanger the physical or emotional welfare of the child." *See Lewelling*, 796 S.W.2d at 166. And we must view the evidence in the light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Lenz*, 79 S.W.3d at 13–14.

To determine whether the evidence is factually sufficient to support the trial court's order, we must consider, weigh, and examine all of the evidence that supports or contradicts the fact-finder's determination. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We may set aside a verdict only if the evidence supporting it is so contrary to the overwhelming weight of the

evidence as to be clearly wrong or manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

When conducting a factual sufficiency review, we must not merely substitute our judgment for that of the fact-finder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The fact-finder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Id.* Thus, to determine the factual sufficiency of the evidence to support the trial court's judgment, we must consider all the evidence. In this case, we may overturn the judgment naming Danet and Kranz managing conservators and giving them the right to determine Bhan's access to J.A.B. on factual sufficiency grounds only if the jury's findings and the trial court's judgment mandatorily entered on those findings are so against the overwhelming weight of the evidence as to be manifestly unjust. *See Cain*, 709 S.W.2d at 176. We may not overturn the trial court's judgment on no-evidence grounds if more than a scintilla of evidence supports the jury's and the trial court's findings. *See Lewelling*, 796 S.W.2d at 166.

### 3. *Standard of Proof in Conservatorship Proceedings Under Family Code Sections 153.131 and 153.004*

Family Code section 153.131 sets out the standard of proof for establishing conservatorship of a child.

Section 153.131(a), pursuant to which the trial court entered the final order that is the issue of this appeal, creates a presumption in favor of a parent seeking custody of a child. It provides,

> *Subject to the prohibition in Section 153.004*, unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

TEX. FAM. CODE ANN. § 153.131(a) (emphasis added). "[T]he nonparent can rebut the parental presumption by showing that the appointment of the parent would significantly impair the child's health or development." *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). "For the court to award managing conservatorship to a non-parent under section 153.131, the non-parent must prove by a preponderance of credible evidence that appointing the parent as a managing conservator would result in serious physical or emotional harm to the child." *Taylor v. Taylor*, 254 S.W.3d 527, 536 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The nonparent must present evidence to support the "logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm." *Id.* This link between the parent's conduct and harm to the child may not be based on evidence that merely raises a surmise or speculation of possible harm. *Id.* The nonparent must offer evidence of specific acts or omissions demonstrating that

18

awarding custody to the parent would result in physical or emotional harm to the child. *Id.*

The parental presumption set out in Family Code section 153.131(a) is expressly made subject to section 153.004 of the Code. *See* TEX. FAM. CODE ANN. § 153.131(a). Section 153.004(b), relevant to this case, provides:

> It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

TEX. FAM. CODE ANN. § 153.004(b) (Vernon 2008).

Under the plain language of sections 153.131(a) and 153.004(b), the parental presumption is removed by a showing that the parent seeking to be appointed managing conservator has a history or pattern of past or present child neglect or physical abuse. *See id.* §§ 153.004(b), 153.131(a). But a nonparent's overcoming the parental presumption is not sufficient to prove the nonparent's own entitlement to be appointed managing conservator. The nonparent must still prove that he or she should be appointed managing conservator by showing, by a preponderance of the evidence, that his or her own appointment would be in the best interest of the child *and* that appointment of the biological parent as managing conservator would significantly impair the physical or emotional development of the child. *See id.*

19

§ 153.131(a). Under section 153.004(b), it is a rebuttable presumption that the parent's pattern of child neglect or physical abuse would significantly impair the physical health or emotional development of the child. The biological parent, however, may establish that she should be appointed sole managing conservator by rebutting the presumption that her history or pattern of behavior will significantly impair the child's emotional or physical development in the future. *See id.* §§ 153.004(b), 153.131(a). In addition, to obtain managing conservatorship, the parent must show, by a preponderance of the evidence, that her appointment will be the child's best interest. *See id.* § 153.131(a). This is shown by evidence going to the *Holley* factors. *Holley*, 544 S.W.2d at 371–72. Section 153.004(e) then provides a final safeguard for the child, stating, "It is a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of past or present child neglect or physical . . . abuse by that parent directed against the other parent, a spouse, or a child." TEX. FAM. CODE ANN. § 153.004(e).

Texas case law supports the foregoing construction of sections 153.131 and 153.004. "In determining the issues of conservatorship and possession of and access to the child, '[t]he best interest of the child shall always be the primary consideration of the court." *In re Rodriguez*, 940 S.W.2d 265, 271 (Tex. App.— San Antonio 1997, writ denied) (quoting TEX. FAM. CODE ANN. § 153.002 (Vernon

20

1996)).  While Texas law presumes that a child's best interest is served by naming the child's biological parent or parents as managing conservators, this presumption is "rebuttable."  *Id.*  Such a rebuttable presumption "shift[s] the burden of producing evidence to the party against whom it operates."  *Id.* (quoting *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993)).  But, "[o]nce that burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and is not to be weighed or treated as evidence.'"  *Id.* (quoting *Saenz*, 873 S.W.2d at 359 (internal citations omitted)).  "The evidence on the issue is then evaluated as it would be in any other case. . . .  The presumption has no effect on the burden of persuasion."  *Id.* (quoting *Saenz*, 873 S.W.2d at 359 (citations omitted)).

Here, the jury found that appointment of Bhan as managing conservator would not be in J.A.B.'s best interest because it would significantly impair his physical and emotional development.  Therefore, section 153.131(a)'s parental presumption disappeared, so long as there was more than a scintilla of evidence to support the jury's verdict and the trial court's judgment, and so long as the judgment actually entered was not so against the weight of the evidence as to be manifestly unjust when the evidence is viewed in a light favorable to the jury's findings and the trial court's judgment.  *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176.

21

But the panel applied neither the correct standard of proof nor the correct standard of review in this case.

**The Panel's Construction of the Standards of Proof and Review**

The panel points out, correctly, that Family Code section 153.131(a) creates a rebuttable presumption that appointment of a biological parent or both biological parents is in the best interest of the child. Slip Op. at 12. The panel then states that "[n]onparents seeking conservatorship carry a 'heavy burden' of overcoming this presumption." Slip Op. at 13 (quoting *Lewelling*, 796 S.W.2d at 167). It continues, "A nonparent may rebut the presumption in favor of a biological parent only if evidence is produced showing that appointment of the biological parent as managing conservator would 'significantly impair the child's physical health or emotional development.'" Slip Op. at 13 (quoting TEX. FAM. CODE ANN. § 153.131(a), and citing *In re R.T.K.*, 324 S.W.3d 896, 902–03 (Tex. App.— Houston [14th Dist.] 2010, pet. denied)). It acknowledges that the parental presumption set out in section 153.131(a) may be overcome "if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child," as provided for in section 153.004 of the Code. Slip Op. at 13 (quoting TEX. FAM. CODE ANN. § 153.004(b) (Vernon 2008)). And it concludes that such evidence "creates a rebuttable presumption that the appointment of the parent as sole

22

managing conservator is not in the best interest of the child." Slip Op. at 13. But there are problems with its statement of the burden of proof.

The panel's statement that the parental presumption is rebutted *only* by evidence that appointment of the parent as managing conservator would significantly impair the child's physical health or emotional development overstates the burden of proof of the nonparent seeking managing conservatorship and is inconsistent with its statements (1) that the parental presumption is rebutted by evidence of a past or present history or pattern of child neglect or physical abuse by that parent and (2) that the production of such evidence creates a rebuttable presumption that appointment of the parent as managing conservator will significantly impair the child's physical health or emotional development. This inconsistency has great consequences in this case in that it justifies the panel's greatly raising the bar for removal of the parental presumption. The panel decides that the presumption can be removed only by proof that appointment of the parent would significantly impair the physical health or emotional development of the child. It then determines that no evidence presented in this case is of that type and that Danet and Kranz's showing of Bhan's pattern or practice of neglect of J.A.B. is irrelevant to proof that Bhan's appointment would significantly impair the physical health or emotional development of J.A.B. It thus keeps the parental presumption in place, and it never gets beyond it.

23

The panel credits *no* evidence presented by Danet and Kranz that their appointment is in the best interest of J.A.B., treating this evidence as irrelevant to overcoming the parental presumption. And it requires *no* proof by Bhan that her appointment is in J.A.B.'s best interest, treating his best interest as simply irrelevant also, since the parental presumption has never been overcome. The jury's findings are likewise treated as irrelevant. Thus, the panel's incorrect application of the standard of proof required for appointment of a parent as managing conservator of a child, as opposed to the appointment of nonparents, combines with the panel's incorrect application of the standard of review to pose an insurmountable barrier to a nonparent's appointment as managing conservator of a child when a parent is also seeking custody. The jury's findings are simply discarded as irrelevant to this legal determination.

Under a proper reading of the Family Code, construing the parental presumption in section 153.131(a) as subject to section 153.004 requires that the appellate court review the evidence supporting the jury's custody determinations to see whether there is more than a scintilla of evidence of a history or pattern of past or present child neglect of the child whose custody is at issue, or another child, by the parent seeking managing conservatorship. *See* TEX. FAM. CODE ANN. §§ 153.131(a), 153.004(b); *City of Keller,* 168 S.W.3d at 810. If there is such evidence when the evidence is viewed in the light most favorable to the jury's

verdict, the panel should conclude that the parental presumption disappeared and a presumption that the parent's appointment as managing conservator was not in the child's best interest took its place. And, unless there is overwhelming evidence in the record that the parent rebutted the presumption that her appointment was not in the child's best interest because of her history or pattern of child neglect *and* overwhelming evidence under the *Holley* factors reflects that her appointment *would be* in his best interest, the reviewing court should affirm the finding of the jury and the judgment of the trial court that the parent's appointment as managing conservator would *not* be in the child's best interest but, instead, would significantly impair his physical health or emotional development. *See In re Rodriguez*, 940 S.W.2d at 271.

Likewise, in considering whether a jury correctly determined that nonparents should be appointed joint managing conservators, the reviewing court should review the evidence in the light most favorable to the verdict to determine whether the nonparents produced more than a scintilla of evidence to support the trial court's judgment that the parent's appointment as managing conservator, or as possessory conservator, of the child would significantly impair the physical health or emotional development of the child and that the appointment of nonparents as joint managing conservators would be in his best interest under the *Holley* factors.

25

To determine, in this case, whether Bhan's appointment as J.A.B.'s managing conservator would not be in J.A.B.'s best interest because it would significantly impair his emotional or physical welfare, and that Danet's and Kranz's appointment would be in his best interest, as the jury and the trial court determined, the panel should have looked to whether there was more than a scintilla of evidence that Bhan had a pattern or history of past or present neglect or physical abuse of a child, including J.A.B., under the *Holley* factors. *See Holley*, 544 S.W.2d at 371–72. It should then have looked to see whether Danet and Kranz had produced more than a scintilla of evidence demonstrating that their appointment as managing conservators would be in J.A.B.'s best interest.

In short, to comply with the standard of proof and standard of review in this conservatorship proceeding, the panel should have considered all the evidence in the light most favorable to the jury's findings, and it should have determined whether more than a scintilla of evidence existed to support the jury's determinations that Bhan's appointment as managing conservator—or even as possessory conservator—would not be in J.A.B.'s best interest because it would significantly impair his emotional or physical development and whether the appointment of Danet and Kranz would be in J.A.B.'s best interest under the *Holley* factors. The panel, however, completely ignores the standard of appellate review.

26

The panel makes three critical analytical errors that lead to a fourth and fatal error. First, the panel treats the parental presumption in favor of Bhan as if it is *not* removed by Danet and Kranz's overwhelming evidence of Bhan's history and pattern of neglect of her parental responsibilities to J.A.B., which it chronicles in detail in its opinion; thus, it keeps the parental presumption in place. Instead, it accuses Danet and Kranz of not *pleading* neglect of J.A.B., and therefore it treats Bhan's history and pattern of neglect of J.A.B. as irrelevant to the removal of the parental presumption. Second, because it never removes the parental presumption, it never treats Danet and Kranz's burden of production on the parental presumption as discharged, and thus it never considers whether Danet and Kranz carried their burden of persuasion that Bhan's appointment would significantly impair J.A.B.'s emotional or physical welfare, so that her appointment would not be in J.A.B.'s best interest, or whether they should be appointed managing conservators because they presented more than a scintilla of evidence that their appointment would be in J.A.B.'s best interest. The panel never requires *any* proof that Bhan's appointment as sole managing conservator would be in J.A.B.'s best interest, and it never credits, or even considers, any of the overwhelming evidence that the appointment of Danet and Kranz as J.A.B.'s managing conservators is in J.A.B.'s best interest and that appointment of Bhan—even as a possessory conservator of J.A.B.—is *not* in J.A.B.'s best interest but would significantly impair his emotional or physical

27

welfare. Third, the panel completely disregards as irrelevant the findings of the jury, which was instructed to follow the *Holley* factors in determining conservatorship. And it completely disregards the judgment of the trial court mandatorily entered on those findings. Thus, the panel discards the abuse of discretion standard of review and reassesses this case *de novo* on the basis of its concern for parental rights in the abstract and its own unstated evidentiary criteria.

The panel opinion acknowledges many of the facts in the record that the jury relied upon in making its finding that Bhan should not be appointed either managing conservator or possessory conservator of J.A.B. Slip Op. at 2–9, 15–18. It acknowledges that J.A.B. was removed from Bhan's custody by the police following a domestic disturbance in circumstances that indicated he was being neglected; that, instead of attempting to regain possession of J.A.B., Bhan spent the following weekend using cocaine in a hotel room with a stranger; and that she subsequently moved to Wisconsin and failed to contact J.A.B. for six months. *See* Slip Op. at 3–4. It acknowledges her past arrests and convictions for marihuana use and battery; her use of cocaine during her pregnancy immediately following the removal of J.A.B. from her care; Alaniz's family violence against her in the hospital following delivery of her next child; her ongoing manifestations of drug and alcohol abuse; her failure to take advantage of scheduled periods of possession; and her inappropriate behavior when she did see J.A.B. *See* Slip Op. at

28

4–9. However, the panel treats none of this as evidence of a pattern or history of child neglect by Bhan or as evidence that Bhan's pattern of behavior would significantly impair J.A.B.'s physical health or emotional development if she were appointed managing conservator. Instead, the panel accepts Bhan's argument that none of this evidence was recent enough or related enough to her recent behavior to "implicate her 'present parental fitness' or support the jury's finding that her conservatorship would significantly impair the child's physical health or emotional development." Slip Op. at 14–19. But past conduct may be probative of future conduct, and evidence of specific instances of a parent's pattern of conduct that jeopardizes the physical health or emotional development of a child—such as drug and alcohol abuse, failure to attend to the child's physical and emotional needs, failure to provide stability in the home or in the parent's personal relationships, and abandonment of the child's interests to the parent's interests—is probative evidence both of a pattern or history of child neglect and of a pattern of conduct that would significantly impair the physical health or emotional development of a child, as shown by the cases discussed below.

The panel also acknowledges that "Kranz and Danet's evidence concerning Bhan's more recent conduct in Houston does reveal that Bhan brought different men with her on her visits with the child, came from Wisconsin to visit the child only twice a year after losing custody of him, showed up late to a visit, tried to

29

board an airplane in Wisconsin while she was intoxicated, 'snuck' into the Houston Children's Museum, and, after travelling to New Orleans following a visit with the child, did not call the child for three weeks." Slip Op. at 15–16. And it acknowledges that J.A.B., while in a swimming pool, went under the water three times while Bhan was supposed to be supervising him. Slip Op. at 16. But while it mentions this evidence, the panel ignores it, although this evidence of Bhan's specific acts and omissions too is probative both of Bhan's past and present pattern of neglect of her parental responsibilities and of behavior that will significantly impair J.A.B.'s physical health or emotional development if he is returned to her custody. It also ignores the fact that there is no evidence that this pattern of behavior has been corrected.

The panel simply concludes that "Kranz and Danet's evidence of Bhan's more recent conduct does not itself constitute evidence that the appointment of Bhan as the sole managing conservator of the child would significantly impair the child's physical health or emotional development." Slip Op. at 17. Thus, it concludes that "there is no evidence that Bhan's conduct, albeit clearly inappropriate, constitutes 'specific action or omissions' that demonstrate that awarding her conservatorship would significantly impair the child's physical health

30

or emotional development."[2]   Slip Op. at 18 (citing TEX. FAM. CODE ANN.

§ 153.131(a)).

The panel also incorrectly implies that the trial court got the definition of

"significantly impair" in the charge wrong by requiring Danet and Kranz to prove

by a preponderance of the evidence "through specific actions or omissions of the

parent" that an award of custody to Bhan would result in physical or emotional

harm to J.A.B..  Slip Op. at 22.  This is, however, the correct standard of proof.

The error is the panel's refusal to count as evidence the specific acts and omissions

of Bhan introduced at trial as evidence relevant either to J.A.B.'s best interest or to

the issue whether Bhan's appointment as his managing conservator would

significantly impair his physical health or emotional development.

The panel distinguishes *McPherson v. Hollyer*, No. 01-09-00619-CV, 2011

WL 1632163, at *6 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, no pet.) (mem.

op.) (quoting *In re K.R.P.*, 80 S.W.3d 669, 677 (Tex. App.—Houston [1st Dist.]

2002, pet. denied)), in which this Court recently held that a child's development

may be significantly impaired when the child is removed from "the only person

who [has] consistently cared" for the child on the ground that the evidence here

---

[2]   The panel thus seems to implicitly require expert testimony on child development in place of the *Holley* factors—which assume that the jury is in a position to determine as a matter of fact whether a parent's pattern of behavior will significantly impair a child's development or health.  *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

does not show an act or omission by Bhan; it just shows delays in the judicial proceedings. Slip Op. at 23. But, in fact, the evidence does show that Danet and Kranz are the only persons who have consistently cared for J.A.B., while, by contrast, Bhan has failed to care for him in any respect. She had elected to leave him "starving" and with a severe diaper rash when he was removed from her care; she neglected to make any immediate effort to get him back, instead spending the weekend using cocaine with a stranger in a hotel room; she elected to abandon him for the next six months. And she elected not to visit J.A.B. more frequently, to limit her number of phone conversations with him, to take a three-week detour to New Orleans when she did visit Houston, thus missing several phone conversations with him, and to get on an airplane while intoxicated, resulting in a delay in her trip, among other acts detailed in the panel's opinion. Viewed in its most favorable light, this evidence supports the jury's determination that Bhan's demonstrated pattern of neglectful conduct would significantly impair at least J.A.B.'s emotional development and likely his physical health as well.

The panel also entirely fails to consider the legislative mandate that, in determining issues of conservatorship and possession of and access to the child, "[t]he best interest of the child shall always be the primary consideration of the court." TEX. FAM. CODE ANN. § 153.002; *In re Rodriguez*, 940 S.W.2d at 271. Thus, it neither references nor applies the *Holley* factors, which the jury was

correctly instructed to use as its guide in determining whether conservatorship and possession of J.A.B. by either Danet and Kranz or Bhan was in J.A.B.'s best interest.

Indeed, Bhan could not have been appointed managing conservator under the *Holley* factors. *See Holley*, 544 S.W.2d at 371–72. There is no evidence that J.A.B. desires to live with Bhan, and there is uncontroverted evidence that he is happy and thriving in his foster home. Danet and Kranz presented evidence that J.A.B. does not enjoy having phone conversations with Bhan and that he "gets very scared" and cries for a couple of nights after speaking with Bhan. Bhan demonstrated past indifference to J.A.B.'s physical and emotional needs, and she has demonstrated no awareness of his current or future physical and emotional needs: her decision to bring different men with her on her few personal visits to J.A.B., her failure to check on J.A.B. over the weekend after police took custody of him and her decision, instead, to spend the weekend using cocaine in a hotel room with a stranger, the delay of her trip to see J.A.B. caused when she had to postpone her flight because she had attempted to board an airplane while intoxicated, her failure to supervise him when he was under her care, and her willingness to remove him immediately from the only home he has ever known and take him to Wisconsin to live with strangers to him under unknown and unstable conditions strongly suggests that she has no concern for his physical and emotional needs.

33

There is evidence that, at one visitation to celebrate J.A.B.'s birthday, Bhan "made some minimal efforts to engage [J.A.B.] in conversation," but then spent most of the time talking to other adults and ignoring J.A.B.—evidence that is particularly troubling given the limited number of visits she had with J.A.B.—and that J.A.B. did not interact much with his younger half-brother and did not have the same relationship with him as he had with his foster brothers. Bhan placed J.A.B. in physical danger in the past by living with him in a home with an abusive man Bhan believed to be his father, Alaniz, and she presented no evidence that the danger would be reduced now or in the future, other than evidence that she was no longer with Alaniz.

Bhan has demonstrated no parental abilities, and while there was evidence that Bhan participated in programs available to assist her in changing her life and completing her Family Service Plan, so as to be in a position to regain custody of J.A.B. and to promote his best interests, there is no evidence she completed her plan or that she has abandoned drugs and alcohol or promiscuity. Bhan's only plans for J.A.B. are to take him immediately away from the only home he has ever known to live out of state in public housing with herself and her invalid mother, who has taken no part in the custody proceedings. There is no evidence that Bhan has stable employment or is able to or will maintain a stable home for J.A.B. or even for herself or that J.A.B. has ever seen or spoken with his grandmother.

34

Bhan's acts and omissions, other than her prosecution of the conservatorship proceedings and her visits to J.A.B., all indicate that the parent-child relationship is not a proper one.

Furthermore, Bhan has presented no excuse for her acts or omissions as a parent other than her lack of financial resources, which limited the trips she could make to Houston to visit J.A.B. in person, but not her ability to contact him by mail or telephone or to spend time with him during her visitation periods. *See Holley*, 544 S.W.2d at 371–72. The *Holley* factors exist for a reason: to ensure that the appointment of a managing conservator of a child will protect and further the best interests of the child and will not significantly impair his emotional and physical welfare and development. Here, the factors were simply disregarded by the appellate panel.

Finally, the panel points to nothing arbitrary or unreasonable in the jury's findings, nor does it view the evidence in a light favorable to the trial court's rulings. *See In re J.A.J.*, 243 S.W.3d at 616 (holding that trial court has wide discretion in determining conservatorship and trial court's decision will not be overturned unless it is arbitrary and unreasonable). The panel, instead, does exactly what the standard of review for legal sufficiency of the evidence in conservatorship cases commands it not to do. It does not view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact-

finder could do so and disregarding contrary evidence unless a reasonable fact-finder could not. *See City of Keller*, 168 S.W.3d at 827. It makes no attempt to view the evidence in a light that tends to support the jury's findings on the disputed facts of whether Bhan's appointment as managing conservator of J.A.B. would in his best interest or would significantly impair J.A.B.'s physical or emotional welfare or development, nor does it disregard all evidence and inferences to the contrary. *See Lenz*, 79 S.W.3d at 13–14; *In re D.A.*, 307 S.W.3d at 561. Instead, it weighs the evidence for itself and determines that it disagrees with the jury as to what constitutes evidence of Bhan's acts and omissions, and it counts all of the evidence presented to the jury as no evidence that any reasonable jury could credit because it does not credit it itself on the basis of its own authority. *See In re C.H.*, 89 S.W.3d at 27 (opining, after stating correct standard of review in termination cases, that "the court of appeals' application of the standard failed to give due deference to the jury's fact-finding function").

Finding from its de novo review of the record under its own unstated criteria that "Kranz and Danet did not present any evidence of Bhan's specific acts or omissions from which a fact finder could reasonably infer that the appointment of Bhan . . . would significantly impair the child's physical health or emotional development," the panel holds the evidence "legally insufficient to support the jury's finding that Kranz and Danet, as non-parents, should be appointed the

36

child's managing conservators." Slip Op. at 23–24. Accordingly, it orders that J.A.B. be removed from the managing conservatorship of Kranz and Danet and placed immediately in the sole managing conservatorship of Bhan, acknowledging that Bhan intends to remove him promptly from the state and take him to Wisconsin, with no showing that such a move is in his best interest. *See* Slip Op. at 9, 23. And it reaches its judgment despite overwhelming evidence that Bhan's appointment, even as possessory conservator, much less as managing conservator, would *not* be in J.A.B.'s best interest and would significantly impair his physical health or emotional development.

In all of the foregoing ways, the panel defies and raises the standard of review and standard of proof for appointment of a non-parent as managing conservator of a child, despite the supreme court's clear directive to the contrary in the parallel situation in termination cases. In *In re C.H.*, the Texas Supreme Court stated:

> We emphasize that, as appellate courts apply the standard [of review in parental rights termination cases that] we announce today, they must maintain the respective constitutional roles of juries and appellate courts. An appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt. *See Santosky [v. Kramer]*, 455 U.S. [745,] 767–69, 102 S. Ct. 1388[, 1402–03 (1982)]), (holding that "beyond reasonable doubt" standard not required in termination cases). While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also

essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.

89 S.W.3d at 26.

The supreme court's requirement that appellate courts should not require a higher standard of review of the evidence than the law requires in parental rights termination cases, like *In re C.H.*, applies with even greater force in conservatorship cases, like this one, where the parent's rights are *not* terminated and where it remains possible for the parent to regain possessory, or even managing, conservatorship upon a showing, in a suit for modification of conservatorship, that circumstances have changed and that a change in conservatorship would be an improvement for the child. *See In re J.A.J.*, 243 S.W.3d at 617; *see also In re V.L.K.*, 24 S.W.3d at 343–44 (holding that parental presumption only applies in original custody determination, not in modification suit). Here, not only does the panel impose a far higher standard of proof and standard of review of the evidence than required or permitted by law in a case in which a non-parent seeks managing conservatorship of a child, it also raises the standard of proof and review to a much higher level for the appointment of a non-parent as managing conservator, which is supposed to require proof only by a preponderance of the evidence, than for termination of parental rights, in which due process rights are at stake and thus clear and convincing evidence of unfitness is required.

The panel cites three cases, none of which actually supports it rulings: *In re S.W.H.*, 72 S.W.3d 772 (Tex. App.—Fort Worth 2002, no pet.), *In re M.W.*, 959 S.W.2d 661 (Tex. App.—Tyler 1997, writ denied), and *May v. May*, 829 S.W.2d 373 (Tex. App.—Corpus Christi 1992, writ denied).

In *May*, the Corpus Christi Court of Appeals recognized the standard of proof necessary to overcome the parental presumption and appoint a non-parent managing conservator of a child; namely, the nonparent must prove that appointment of the parent as managing conservator would significantly impair the child's welfare, either physically or emotionally. 829 S.W.2d at 376. The court stated that "the nonparent must usually present evidence affirmatively showing conduct of the parent which will have a detrimental effect upon the child, such as physical abuse, severe neglect, abandonment, drug or alcoholic abuse or very immoral behavior on the part of the parent." *Id.* at 376–77.

After observing that "the material time concerning fitness for child custody is the present," the *May* court affirmed the judgment of the trial court awarding custody of two minor children to their grandfather rather than to their father, the appellant. *Id.* at 377, 378. The court noted that "evidence of past misconduct or neglect may not of itself be sufficient to show present unfitness," but it also stated that "this principle is qualified by the permissible inference that an adult person's future conduct may well be measured by his recent deliberate past conduct as it

39

may be related to the same or a similar situation." *Id.* at 377. The court further noted that the trial court could "logically infer" that the father's serious violations of the law, such as the use and sale of drugs, "would set an unacceptable standard for the children to follow and significantly impair their emotional development." *Id.* at 377–78.

The court observed that, although the father's "last proven violation" of the law was his use and sale of drugs out of his home two years earlier, this was some evidence that the father's appointment as managing conservator would not be in the children's best interest "because it would significantly impair their emotional development." *Id.* at 378. It then found that the evidence was factually sufficient to support the trial court's judgment in that, rather than contradicting his prior drug-related conduct, the father admitted his past use of marihuana, and "[a]side from his testimony that he had been 'clean and straight for the last two years,' there was no evidence that [he] had rehabilitated or that future drug use [was] unlikely." *Id.* Thus, the trial court's determination that his appointment as managing conservator would significantly impair his children's emotional development was supported by sufficient evidence of his drug-related conduct and was "not manifestly unjust or clearly wrong." *Id.*

Here, although the panel noted the evidence presented by Danet and Kranz that affirmatively showed conduct of Bhan which predictably would have a

detrimental effect upon J.A.B., "such as physical abuse, severe neglect, abandonment, drug or alcoholic abuse or very immoral behavior on the part of the parent," it disagrees with the *May* court that any of this is relevant evidence. *See id.* at 376–77. And, although there was no evidence that Bhan had completed any drug rehabilitation program, that she was sober, that she was able to support herself, that she had ceased her immoral and illegal behavior, that she had developed any parenting skills, or that she had any plans for J.A.B. or would be able to support him, it concluded that there was no evidence that Bhan's appointment would significantly impair J.A.B.'s physical or emotional welfare. This is the opposite of the conclusion reached by the *May* court on the basis of much less evidence of a pattern or history of child neglect and much less evidence that appointing the parent as managing conservator would significantly impair the physical health or emotional development of the child. *See id.* at 377–78. Thus, were this Court to follow the same principles of law the *May* court did, it would necessarily conclude that appointment of Bhan as managing conservator would significantly impair the physical or emotional development of J.A.B., and it would affirm the judgment of the trial court. It, however, does the opposite, citing *May* as authority for its ruling.

Likewise, *In re M.W.*, relied upon by the panel, stands in contrast to this case. In *In re M.W.*, the Tyler Court of Appeals reversed the award of custody of a

41

child to a grandmother who intervened in a suit to determine custody between the child's unmarried mother and father—the grandmother's son—after the trial court received a negative report from the court-appointed psychologist about the father. 959 S.W.2d at 663. The mother had originally been named sole managing conservator, but she had entered an agreement with the father whereby he would temporarily be sole managing conservator while she attended college for two years and the agreement would not be construed as abandonment of the child by the mother. *Id.* During this time, the mother maintained insurance for the child, regularly visited her and spoke with her on the telephone, and picked her up during holidays and on weekends. *Id.* at 667. There were no problems during the period of temporary visitation. *Id.* After she received her degree, the mother notified the grandmother that she would be taking permanent possession of the child. *Id.* Although there had been family violence between the mother and father before the birth of the child over five years earlier, it was remote, and violence never took place in front of the child. *Id.*

Citing the same standard of proof as the *May* court, the appellate court held that the grandmother had failed to show a link between either parent's harmful conduct toward each other and harm to the child and that there was no evidence the parents had voluntarily relinquished the child to the grandmother. *Id.* at 668. It reversed the trial court's order and remanded the case to the trial court for a

determination of managing conservatorship as between the mother and the father. *Id.* There is no relationship between any of the circumstances present in *In re M.W.* and those in this case.

Finally, both the panel and Bhan rely most heavily on *In re S.W.H.*, a case which, likewise, is, in critical respects, the opposite of this case. In that case, there was evidence that the mother used alcohol and marihuana while she was pregnant with the child and subsequently tested positive for drugs during a routine urine analysis performed by her probation officer. *In re S.W.H.*, 72 S.W.3d at 774–75. Her probation was revoked, and she was sentenced to a Substance Abuse Felony Punishment Treatment Facility ("SAFP"). *Id.* at 774. She voluntarily surrendered possession of the child to the appellees, her good friends, while she was incarcerated in the SAFP and, subsequently, in a half-way house. *Id.* While she was incarcerated, and before the period for establishing voluntary relinquishment had run, the appellees filed for managing conservatorship on the ground that the mother had voluntarily abandoned the child, and they obtained an order appointing them temporary managing conservators and a temporary restraining order precluding the mother from contacting the child. *Id.* at 774–75.

There was uncontroverted evidence that, in the four years following the day she was placed in the SAFP for treatment, the mother had remained clean and sober. *Id.* at 778. At the time of trial she had been living with her boyfriend and

43

her other daughter for approximately one and one-half years. *Id.* The mother presented evidence that S.W.H. would be well cared for in her current living situation, while the appellees failed to provide any expert witnesses or other evidence to establish that S.W.H. would be harmed by being placed with her mother. *Id.* at 778–79. The CPS caseworker, who had been assigned to intervene early in the case because the mother had tested positive for drugs, testified that she had neither concerns about the conditions of the mother's home nor other health or safety concerns for S.W.H. and that CPS had never recommended that S.W.H. be taken from her mother. *Id.* at 779. The Fort Worth Court of Appeals further observed that the mother had "maintained steady employment, [kept] a safe and stable home environment, and [had] bonded with S.W.H. during visitations" since her release from the SAFP. *Id.*

The court found no evidence that the mother's appointment as managing conservator would significantly impair S.W.H.'s physical health or emotional development. *Id.* It reversed the trial court's decision appointing the appellees managing conservators and remanded for rendition of judgment naming the mother the managing conservator of S.W.H. *Id.* Thus, again, the circumstances in *In re S.W.H.*, upon which both Bhan and the panel rely to support the appointment of Bhan as sole managing conservator of J.A.B., are exactly the opposite of those in this case.

In my view, the trial court correctly instructed the jury in the applicable standard of proof in conservatorship proceedings; the jury's findings were supported by the evidence; the trial court correctly entered judgment on those findings, in accordance with its statutory mandate; and it did not abuse its wide discretion in appointing Danet and Kranz joint managing conservators and in denying possession to Bhan; it is, instead, the appellate panel which has reached an arbitrary and unreasonable ruling. *See Low*, 221 S.W.3d at 614; *In re J.A.J.*, 243 S.W.3d at 616; *see also* TEX. FAM. CODE ANN. § 105.002(c)(1)(A)–(C) (Vernon 2008) (providing that party is entitled to jury verdict, and trial court may not contravene jury verdict, on issues of appointment of sole managing, joint managing, and possessory conservators).

## Conclusion

I believe that the panel incorrectly applies both the standard of proof and the standard of evidentiary review in conservatorship cases. It evaluates the facts without regard to guiding principles or the jury's findings. And it improperly reverses the correct judgment of the trial court and arbitrarily and unreasonably substitutes its own. The opinion and judgment in this case conflict with similar cases from our sister appellate courts, the Texas Supreme Court, and the plain language of the governing statutes, and they directly contravene the express purpose and provisions of Family Code Chapter 153. I further believe that

enforcement of the panel's judgment will have immediate and foreseeable prejudicial results for the emotional and physical welfare of J.A.B., whose best interests are the subject of these proceedings. Finally, the precedent for conservatorship cases established by this case is far outside the mainstream of Texas law and sets a path for future cases that will subject children to arbitrary appellate decisions as to what conservatorship arrangement is in their best interest, in place of the carefully articulated statutory and case law currently governing this vital area of family law. This shift in the law presents a particularly immediate concern for those cases, like this one, in which a child has been removed from a parent's custody by the Department of Family Protective Services (DFPS), formerly CPS, for abuse or neglect of the child by the parent, yet DFPS has decided not to seek termination of parental rights, and, instead, has decided to permit non-parents to seek to be appointed managing conservators in place of DFPS. Therefore, I would grant en banc reconsideration. *See* TEX. R. APP. P. 41.2(c).

I would overrule Bhan's issues and affirm the judgment of the trial court.


Evelyn V. Keyes
Justice


Panel consists of Justices Jennings, Sharp, and Brown.

En banc reconsideration was requested. TEX. R. APP. P. 41.2(c).

Chief Justice Radack and Justices Jennings, Keyes, Higley, Sharp, Massengale, Brown, and Huddle participated in the vote to determine en banc reconsideration. Justice Bland, not sitting.

A majority of the Court voted to deny en banc reconsideration. *See* TEX. R. APP. P. 49.7.

Justice Keyes, dissenting from the denial of en banc reconsideration.